**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.M., I.M., K.M., and H.M.**

**No. 18-0632** (Kanawha County 17-JA-432, 17-JA-433, 17-JA-434, and 17-JA-435)

**MEMORANDUM DECISION**

Petitioner Mother A.M., by counsel Christopher C. McClung, appeals the Circuit Court of Kanawha County's June 12, 2018, order terminating her parental rights to D.M., I.M., K.M., and H.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Davis, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the DHHR filed a child abuse and neglect petition against petitioner in August of 2015. The DHHR alleged that petitioner had been admitted to a psychiatric hospital pursuant to a mental hygiene petition. The children reported seeing petitioner "snort lines of stuff" and "smoke stuff in a bowl." Petitioner admitted to using methamphetamine and cocaine on a daily basis. However, she left the hospital against medical advice before completing treatment for either her mental health or drug abuse issues. Petitioner was adjudicated as an abusing parent and granted an improvement period, which she successfully completed. The children were returned to her care and the petition against her was dismissed.

In October of 2017, the DHHR filed the instant child abuse and neglect petition against petitioner. According to the DHHR, it received a referral in June of 2017 that petitioner inappropriately disciplined the children, used marijuana in their presence, left the youngest child in soiled diapers for extended periods of time, engaged in domestic violence, and failed to keep

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

appropriate food in the house. After completing a walk-through of the house, a Child Protective Services ("CPS") worker determined that the house was cluttered, but not a danger to the children. The CPS worker offered services to petitioner, which she refused. After receiving a second referral, the CPS worker again responded to petitioner's home and found it to be in complete disarray, with clothing and household items blocking exits and the furnace. The home had no electricity or water and the children were forced to use coolers for food or go to D.M.'s father's home to eat. Further, the DHHR alleged that petitioner posted an explicit photograph of herself on social media, essentially offering to trade sex for methamphetamine. In sum, the DHHR concluded that petitioner failed to provide for the children and was not sufficiently motivated or organized to provide for them on an ongoing basis.

Petitioner stipulated to the allegations contained in the petition in November of 2017, was adjudicated as an abusing parent, and requested a post-adjudicatory improvement period. Although the circuit court held the motion in abeyance, petitioner was offered services.

During the proceedings, then sixteen-year-old H.M. advised the guardian, and eventually testified, regarding the conditions of abuse in the home. H.M., who lived with her non-abusing father, reported that her siblings essentially had to care for themselves. She testified that her youngest sibling was left in soiled diapers and ate moldy food off the floor. H.M. stated that she came to petitioner's home on weekends to ensure that her siblings were cared for and noted that petitioner rarely went to the grocery store. H.M. further reported that she tried to clean petitioner's home, but it became more than she could manage. On one occasion, H.M. observed maggots in the food in petitioner's refrigerator. Due to a lack of utilities, the children consumed food stored in picnic coolers, lived without lights, and took cold showers. H.M. feared that petitioner would revert to the same behavior should the circuit court return the children to her custody and requested that petitioner's parental rights to all the children be terminated.

The circuit court held the dispositional hearing over the course of three days throughout February and April of 2018. A CPS worker testified that, despite successfully completing an improvement period in a prior case, the instant petition was filed against petitioner for similar circumstances and she was again granted services including random drug screens, parenting classes, and adult life skills classes. Later during the proceedings, psychotherapy sessions focusing on substance abuse and mental health were also provided to petitioner, as well as a psychological evaluation. Petitioner's service provider testified that she was very compliant with services and seemed insightful and remorseful. However, the evaluating psychologist testified that petitioner's prognosis for attaining minimally adequate parenting in the near future was poor. The psychologist determined that petitioner was extremely defensive and "faking good," which rendered certain tests invalid due to her "over the top" responses. The psychologist opined that petitioner would be unlikely to significantly improve her behavior due to her history of services and continued minimization of the problem, stating

> any time someone has extensive services and they repeat the problem, we are very concerned particularly because it – you know, oftentimes, there is nothing new that can be offered. All we can do is give more of the same services that have already been ineffective. In [petitioner's] case, she was not acknowledging a significant need for intervention.

Finally, petitioner testified that she learned more information during the underlying proceedings than she had in her first abuse and neglect case. Petitioner stated that she participated in all services, maintained employment, tested negative during her random drug screens, and had obtained suitable housing. She believed that she could correct the conditions of abuse, and asked the circuit court for an improvement period. However, petitioner minimized the situation and insinuated that H.M.'s testimony was inaccurate because the child was mad at her. She testified "I've been a great mom for [H.M.] There was just some times that I made bad decisions."

After hearing evidence, the circuit court found that H.M.'s testimony was compelling and credible, and demonstrated persistent and long-term neglect by petitioner. Further, the circuit court found that, due to petitioner's poor prognosis for attaining minimally adequate parenting skills and her repeated case history, the children would be at risk if they were returned to her care. The circuit court determined that, despite demonstrating that she could care for the children on a short-term basis, there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare. It is from the June 12, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period designed to address her needs and those of her children. According to petitioner, she complied with the services granted to her during the

---

[2]Petitioner's parental rights to the children were terminated below. The parental rights of the fathers of D.M., I.M., and K.M. were also terminated below. The permanency plan for these children is adoption by the maternal grandmother. H.M.'s father is a non-offending parent and the permanency plan for the child is to remain in his care.

underlying proceedings by attending all parenting and adult life skills classes, producing negative drug screens, maintaining employment, and obtaining suitable housing. As such, petitioner contends that she demonstrated that she was likely to successfully participate in an improvement period and the circuit court erred in terminating her parental rights before granting her the same. We find no merit in petitioner's argument.

We have held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have further held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

First, we note that although petitioner was not granted a formal improvement period, she was offered services throughout the proceedings below. In fact, petitioner concedes as much in her argument insofar as she lists all of the services with which she complied. These services included random drug screens, parenting classes, adult life skills classes, psychotherapy sessions, and a psychological evaluation. However, the circuit court determined that, despite her compliance with services, petitioner only demonstrated the ability to care for the children for short periods and was unable to consistently provide for the children on a regular basis. In fact, the record establishes that petitioner was granted numerous services over the course of her first abuse and neglect proceedings and was able to comply while under the scrutiny of the court. Yet, after having the children returned to her care, petitioner returned to the same abusive behavior, which led to the filing of the instant petition.

We have previously noted that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In the Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991) (quoting *W.Va. Dep't of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Moreover, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Here, petitioner failed to show what additional services she could have received that would have helped her address the conditions of abuse. She was granted numerous services throughout two proceedings, but ultimately failed to demonstrate that she improved her overall attitude or approach to parenting. Accordingly, we find that petitioner is entitled to no relief in this regard.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's

welfare. West Virginia Code § 49-4-604(c)(3) sets forth that "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected" exists when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. While petitioner participated with services and maintained employment during these proceedings, she previously demonstrated the ability to comply with services while under scrutiny only to fall back into abusive behavior. In fact, the evaluating psychologist opined that petitioner's prognosis for attaining minimally adequate parenting skills was poor due to having already received extensive services throughout the course of two cases. Further, the psychologist opined that petitioner failed to acknowledge the need for intervention. During the dispositional hearing, petitioner's testimony showed that she believed H.M.'s reports were exaggerated because the child was angry at her and minimized her actions, stating "[t]here was just some times that I made bad decisions." As such, despite petitioner's compliance with services, she failed to demonstrate that she meaningfully followed through with services or addressed the conditions of abuse. While petitioner requests more time to comply with services, we have held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . ." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 12, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

5

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment